# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Markus Vriba d/b/a Islandertech, <br><br> Plaintiff, <br><br> v. <br><br> Naodan Chartering, Inc., <br><br> Defendant. | Case No.:   2:15-cv-00281 <br><br> **COMPLAINT** |

Plaintiff Markus Vriba, a sole proprietor operating under the name Islandertech (herein, "Islandertech") files this Complaint against Defendant Naodan Chartering, Inc. ("Defendant Naodan") showing as follows:

### Nature of the Action

1)      Islandertech's former cloud services client, Defendant Naodan, caused Islandertech damage when defendant or its agents abused its access to Islandertech's servers to obtain and then convert confidential Microsoft license codes.

**Parties**

2) Plaintiff is a sole proprietorship operating primarily in the State of Washington with its principal place of business in the City of Mercer Island.

3) On information and belief, Defendant Naodan is a corporation with its principal place of business in the City of Mercer Island, Washington.

**Jurisdiction and Venue**

4) Jurisdiction in this Court is proper under 28 U.S.C. § 1331 because the principal claims arise under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

5) This Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.

6) Venue in this district is proper under 28 U.S.C. § 1391 because both parties to the dispute are based in the Seattle area.

**Statement of Facts**
ISLANDERTECH'S CLOUD SERVICES

7) Islandertech is in the business of providing information technology services, specifically cloud-based services, to clients such as Defendant Naodan.

8) Islandertech provides information technology services to small and mid-market companies around the Puget Sound region.

9) On information and belief, Defendant Naodan conducts interstate

1 commerce by brokering cargo across state or international boundaries.

10) "Cloud services" is an industry phrase that generally refers to a lower-cost and more robust method of offering information technology services than traditional on premises services provide; cloud services are hosted on servers and accessed over a computer network such as the Internet.

11) Generally, cloud services lower the initial cost of acquiring modern technology for clients like Defendant Naodan because clients pay on a monthly (or other periodic) basis for modern computing software and hardware instead of incurring the large upfront costs typically required to acquire software licenses and hardware; but this is possible only by shifting the initial financial burden on cloud providers.

12) In contrast to the cloud services that were popularized in the industry by companies such as Amazon, who initially hosted public cloud services over the Internet, Islandertech configures, installs, and supports private cloud installations for clients like Defendant Naodan.

13) Defendant Naodan contracted with Islandertech to provision and support such a private cloud instance ("Naodan's Private Cloud").

14) The purpose of Naodan's Private Cloud was to provide services such as email and office applications in the form of Microsoft Outlook or Word to be used in Defendant Naodan's business.

15) Naodan's Private Cloud was "dedicated" to Defendant Naodan; thus, no

COMPLAINT                              Page - 3
Case no.: 2:15-cv-00281

Michael Rice Law
180 E. Walnut, #401
Pasadena, CA  91103
(206) 817-8177

1  other client was authorized to access the software or hardware provisioned for Naodan's Private Cloud.

16) To provision Naodan's Private Cloud, Defendant Islandertech acquired hardware and also acquired software licenses from Microsoft.

17) Islandertech acquired licenses for its own internal use of various Microsoft products such as Microsoft Windows and the Microsoft Developer Network as well (collectively, the licenses acquired for Naodan's Private Cloud and for its own account are referred to as "Islandertech's Microsoft Licenses").

18) Islandertech's Microsoft Licenses are owned by Islandertech and could be reused for different Islandertech clients in the event Defendant Naodan terminated its contract with Islandertech.

19) Additionally, depending on the nature of the contract, Islandertech installed Microsoft software for other clients' cloud instances using that client's Microsoft licenses from time to time.

## ISLANDERTECH'S RELATIONSHIP WITH MICROSOFT AND THE IMPORTANCE OF SECRET LICENSE KEYS

20) Islandertech is a "Microsoft shop," which is industry jargon implying that Islandertech primarily provides information technology services based on the large catalog of interoperating software provided by Microsoft Corporation ("Microsoft") and has specialized skills with Microsoft products.

21) Microsoft provides license agreements to companies such as Islandertech,

COMPLAINT
Case no.: 2:15-cv-00281
Page - 4
Michael Rice Law
180 E. Walnut, #401
Pasadena, CA  91103
(206) 817-8177

which as mentioned Islandertech acquired partly to provide cloud services to Defendant Naodan, partly for other clients, and partly for its own account.

22) Because of the importance of Microsoft as a vendor to Islandertech's business, Islandertech must cultivate and protect its relationship with Microsoft to obtain future licenses on favorable terms.

23) To reduce software piracy, Microsoft provides licensees unique secret product keys ("Microsoft Product Keys") that are commonly twenty five characters long and appear substantially similar to the following: C9G5K-J4KW5-F3RT9-DM3F5-FF4Y7 (not a real key).

24) Microsoft Product Keys traditionally appeared in the compact disc case containing the physical media for the software, but they are increasingly delivered to Microsoft clients such as Islandertech via electronic mail or over a web page as part of an electronic commerce transaction with Microsoft or one of its resellers.

25) When a licensee installs most Microsoft products, such as Microsoft Word, the licensee is commonly prompted to type in Microsoft Product Keys before allowing the licensee to install the product; if the licensee does not have valid Microsoft Product Keys, the software typically will not install on a computer or will only provide limited functionality until the licensee enters a valid Microsoft Product Key.

26) Microsoft Product Keys are mathematically complex and designed to be difficult to guess or "hack" so a user cannot simply fabricate an arbitrary twenty-five

digit set of alphanumeric characters and expect the product to work.

27)   After installing the software, Microsoft products typically run an "activation" process that attempts to register the installed software over the Internet with Microsoft servers to help Microsoft detect piracy.

## ISLANDERTECH'S CLOUD SERVICES TO DEFENDANT NAODAN

28)   To fulfill its contract with Defendant Naodan, Islandertech provisioned and hosted Naodan's Private Cloud on one virtualized server, meaning that the server instance was created solely for Defendant Naodan's use ("Naodan Server 1") and no other Islandertech client had access to it.

29)   Islandertech acquired licenses (and Microsoft Product Keys) for Naodan's Private Cloud for the following products: Microsoft Windows Server 2012, ten client access licenses, ten licenses of Microsoft Windows 8 Professional, and ten instances of Microsoft Office 2012 Professional.

30)   Islandertech entered the secret Microsoft Product Keys when installing Microsoft Windows Server 2012 on Naodan Server 1.

31)   Islandertech acquired ten client access licenses ("CALs") for Naodan Server 1, meaning that up to ten other computers, likely desktops in this case, would be permitted to communicate with Naodan Server 1.

32)   Naodan Server 1 was configured to provide cloud-based desktop instances to employees of Defendant Naodan using a technology called hypervisor, which

generally allows employees of Defendant Naodan to access not only cloud-based server applications but also their desktops in the cloud (the "Naodan Cloud Desktops").

33) Islandertech installed Microsoft Windows 8 Professional on the ten Naodan Cloud Desktops and entered Microsoft Product Keys specific to those instances during the installation process on Naodan Server 1.

34) Islandertech installed Microsoft Office 2012 Professional on the ten Naodan Cloud Desktops and entered Microsoft Product Keys specific to those instances during the installation process on Naodan Server 1.

35) While Defendant Naodan generally had access only to Naodan Server 1, one employee of the company had specialized access to Islandertech's primary server, which could have been used to access other client's cloud instances as well as Islandertech's internal software; no other Islandertech client had similar access.

DEFENDANT NAODAN'S ABUSE OF THE CLOUD SERVICES AND ILLEGAL TRANSFER OF SECRET LICENSES

36) On information and belief, in April 2014, Defendant Naodan or one of its agents or contractors installed and executed software called The Magical Jelly Bean KeyFinder ("KeyFinder") in Naodan's Private Cloud without Islandertech's knowledge or consent.

37) KeyFinder is a software application that can be freely downloaded.

38) According to KeyFinder's website, KeyFinder "is a freeware utility that retrieves your Product Key (cd key) used to install [W]indows from your registry" and

COMPLAINT                           Page - 7
Case no.: 2:15-cv-00281

Michael Rice Law
180 E. Walnut, #401
Pasadena, CA  91103
(206) 817-8177

can be used to obtain the secret product keys for thousands of different products; in other words, KeyFinder is used to extract secret Microsoft Product Keys.

39) KeyFinder was not installed by Islandertech, and the only party other than Islandertech who had access to Naodan's Private Cloud or other Islandertech instances was Defendant Naodan or any access granted by Defendant Naodan to its agents.

40) In May 2014, Islandertech began receiving complaints from certain other cloud clients about problems with their Windows 8 and Office installations related to their licenses for those products.

41) Islandertech contacted Microsoft and discovered that at least one license owned by another client had been revoked and others had been flagged for abuse by Microsoft (likely through its activation process), but it was not clear to Islandertech the source of the abuse.

42) On information and belief, the abuse triggers from Microsoft were caused when Microsoft Product Keys were obtained and subsequently used on other installations of Microsoft products that went through the activation process.

43) Later, in November 2014, Defendant Naodan asked Islandertech to transfer data from Naodan's Private Cloud to another provider.

44) During that transfer, Islandertech discovered KeyFinder on Naodan's Private Cloud.

45) On December 23, 2014, Defendant Naodan admitted to undersigned

counsel that it installed and executed KeyFinder.

46) The most important use of a tool such as KeyFinder is to extract secret Microsoft Product Keys for licensed products; since the licenses did not belong to Defendant Naodan, the mere installation and use of such a tool exceeds Defendant Naodan's access authority.

47) Islandertech paid and/or credited at least $6,000 to replace some revoked licenses owned by Islandertech's other clients and was forced to spend time resolving issues with Microsoft caused by the abused licenses, which also caused Islandertech reputational damage with its most important vendor.

48) Islandertech believes the abused licenses and reputational damage will cause it to incur additional economic damage when it needs to upgrade software for other clients because Islandertech will not be able to take advantage of lower cost upgrades typically offered by Microsoft.

49) Islandertech believes the record of license revocation and abuses caused by Defendant Naodan will make it difficult for Islandertech to obtain future licenses on favorable terms from Microsoft or may cause it to lose eligibility for price-advantaged upgrades, which effectively means that Islandertech will likely be forced to pay more for future Microsoft licenses than it would have had Defendant Naodan or its agents not improperly and illegally obtained the secret keys.

COMPLAINT
Case no.: 2:15-cv-00281
Page - 9
Michael Rice Law
180 E. Walnut, #401
Pasadena, CA  91103
(206) 817-8177

## THE COMPUTER FRAUD AND ABUSE ACT

50) Generally, the Computer Fraud and Abuse Act (the "CFAA") provides a number of civil and criminal causes of action against defendants who obtain information or cause damage to plaintiffs or victims of abuse on protected computers, 18 U.S.C. § 1030; at least three of those claims are implicated in this case.

51) The CFAA defines a "computer" broadly to include the typical computer devices commonly used by the parties to this dispute. 18 U.S.C. § 1030(e)(1).

52) Many sections of the CFAA, including those relied upon in this complaint, turn on whether the injury affects a "protected computer," which the CFAA defines quite broadly to include a computer "used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

53) For example, the Computer Fraud and Abuse Act provides a civil cause of action when a defendant "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains [...] information from any protected computer." 18 U.S.C. § 1030(a)(2).

54) Secondly, the CFAA provides another civil claim when a defendant "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not

COMPLAINT
Case no.: 2:15-cv-00281

Page - 10

Michael Rice Law
180 E. Walnut, #401
Pasadena, CA  91103
(206) 817-8177

more than $ 5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4).

55) Thirdly, the CFAA provides yet another civil claim when a defendant "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A).

56) In the context of a civil claim, the CFAA requires a plaintiff to establish one factor from the list of six factors defined in 18 U.S.C. § 1029(c)(4)(A)(i) including: a loss exceeding $5,000, 18 U.S.C. § 1029(c)(4)(A)(i)(I); damage to medical records, 18 U.S.C. § 1029(c)(4)(A)(i)(II); physical injury, 18 U.S.C. § 1029(c)(4)(A)(i)(III); threats to public health or safety, 18 U.S.C. § 1029(c)(4)(A)(i)(IV); damage to a United States computer used for national defense, 18 U.S.C. § 1029(c)(4)(A)(i)(V); or damage to ten or more protected computers, 18 U.S.C. § 1029(c)(4)(A)(i)(VI). 18 U.S.C. § 1029(g).

57) Damages under 18 U.S.C. § 1029(c)(4)(A)(i)(I) are limited to economic damages, and a claim must be brought within two years of the act or discovery of damage.

**Count One**
VIOLATION OF SECTION 1030(A)(2)
OF THE COMPUTER FRAUD AND ABUSE ACT

58) Islandertech realleges and incorporates by reference herein all of the allegations contained in Paragraphs (1) through (57) of this Complaint.

59) CFAA's procedural requirements for civil claims are satisfied because

COMPLAINT    Page - 11
Case no.: 2:15-cv-00281

Michael Rice Law
180 E. Walnut, #401
Pasadena, CA  91103
(206) 817-8177

Islandertech suffered economic losses exceeding $5,000 and because the damage may have affected more than ten protected computers.

60) The computers at issue are protected computers for the purposes of the CFAA because the computers implicated were used in interstate commerce.

61) Defendant Naodan acted with the requisite intent when it or its agents knowingly installed and ran the KeyFinder utility on the protected computers.

62) Defendant Naodan or its agents necessarily accessed the computers to install said program.

63) Defendant Naodan or its agents obtained information by running the KeyFinder utility and/or any other similar tools to be identified during discovery at least because the Defendant obtained the secret license codes that were proprietary to Islandertech and/or Islandertech's other clients.

64) Defendant Naodan or its agents exceeded authorization because it was not entitled to see, let alone take and use, said secret license codes.

**Count Two**
VIOLATION OF SECTION 1030(A)(4)
OF THE COMPUTER FRAUD AND ABUSE ACT

65) Islandertech realleges and incorporates by reference herein all of the allegations contained in Paragraphs (1) through (57) of this Complaint.

66) CFAA's procedural requirements for civil claims are satisfied because Islandertech suffered economic losses exceeding $5,000 and because the damage may

COMPLAINT
Case no.: 2:15-cv-00281
Page - 12
Michael Rice Law
180 E. Walnut, #401
Pasadena, CA  91103
(206) 817-8177

have affected more than ten protected computers.

67) The computers at issue are protected computers for the purposes of the CFAA because the computers implicated were used in interstate commerce.

68) Defendant Naodan acted with the requisite intent when it knowingly installed and ran the KeyFinder utility on the protected computers.

69) Defendant Naodan necessarily accessed the computers to install said program.

70) Defendant exceeded its authorization because it was not entitled to access, let alone take and use, the Islandertech's Microsoft Product Keys and/or product keys belonging to Islandertech's other clients.

### Count Three
VIOLATION OF SECTION 1030(A)(5)(A)
OF THE COMPUTER FRAUD AND ABUSE ACT

71) Islandertech realleges and incorporates by reference herein all of the allegations contained in Paragraphs (1) through (57) of this Complaint.

72) CFAA's procedural requirements for civil claims are satisfied because Islandertech suffered economic losses exceeding $5,000 and because the damage may have affected more than ten protected computers.

73) The computers at issue are protected computers for the purposes of the CFAA because the computers implicated were used in interstate commerce.

COMPLAINT
Case no.: 2:15-cv-00281
Page - 13
Michael Rice Law
180 E. Walnut, #401
Pasadena, CA  91103
(206) 817-8177

74) Defendant Naodan acted with the requisite intent when it or its agents knowingly installed and ran the KeyFinder utility on protected computers and obtained Islandertech's Microsoft Product Keys and/or those of Islandertech's other clients.

75) Defendant Naodan or its agents necessarily transmitted Islandertech's Microsoft Product Keys or other clients' secret product keys when, on information and belief, it copied and used the Microsoft Product Keys on other installations of the Microsoft products.

76) Defendant Naodan caused damage, clearly without authorization, by abusing Islandertech's Microsoft Product Keys and/or Islandertech's other clients' license keys and thereby intentionally caused damage to Islandertech's existing installations and its relationship with Microsoft as well as its other clients.

### Count Four
CONVERSION

77) Islandertech realleges and incorporates by reference herein all of the allegations contained in Paragraphs (1) through (57) of this Complaint.

78) Under Washington law, a plaintiff states a claim for conversion when, without lawful justification, a defendant willfully interferes with, and thereby deprives another of, the other's right to a chattel.  See, e.g., Davenport v. Wash. Educ. Ass'n, 147 Wn. App. 704, 721-22, 197 P.3d 686, 695 (2008).

79) Defendant Naodan willfully interfered by, *inter alia*, installing the KeyFinder utility and obtaining Islandertech's Microsoft Product Keys and/or those of

COMPLAINT                    Page - 14
Case no.: 2:15-cv-00281

Michael Rice Law
180 E. Walnut, #401
Pasadena, CA  91103
(206) 817-8177

Islandertech's other clients and using those secret keys for its own installations.

80)   Defendant Naodan deprived Islandertech of those secret codes by using them on their own installations or their agents' installations and thereby caused Islandertech to reimburse clients, triggering abuse flags from Microsoft, possibly requiring Islandertech to reimburse its other clients for the converted product keys, and likely caused Islandertech additional costs for future upgrades.

### Count Five
### CIVIL TRESPASS

81)   Islandertech realleges and incorporates by reference herein all of the allegations contained in Paragraphs (1) through (58) of this Complaint.

82)   Under Washington law, the elements of civil trespass include: (1) an act that interferes with a person's right of possession in the property; (2) intent to perform the act bringing about the interference; (3) causation; and (4) damages. E.g., Cordner v. Dunn, 2000 Wash. App. LEXIS 9, 5-6 (Wash. Ct. App. Jan. 6, 2000) citing Restatement (Second) of Torts §§ 216-222 (1965).

83)   Defendant Naodan or its agents interfered with Islandertech's ability to use its secret Microsoft codes by obtaining access to them and using them.

84)   Defendant Naodan or its agents acted with intent by installing KeyFinder and obtaining Islandertech's Microsoft Product Key and/or those of Islandertech's other clients.

COMPLAINT
Case no.: 2:15-cv-00281
Page - 15
Michael Rice Law
180 E. Walnut, #401
Pasadena, CA   91103
(206) 817-8177

85) Defendant Naodan's or its agents acts caused the damage by triggering Microsoft abuse flags and by causing it to incur replacement costs for at least one Microsoft Product Key.

86) Defendant Naodan's or its agents caused economic damage in that Islandertech was required to obtain replacement Microsoft Product Keys and damaged Islandertech's relationship with Microsoft as well as its relationship with its other clients.

## Prayer for Relief

WHEREFORE, Islandertech respectfully demands that judgment be made and entered in its favor against Defendant Naodan as follows:

(A) Require Defendant Naodan to account to Islandertech all secret codes and any other confidential and/or proprietary information obtained.

(B) Award Islandertech actual and compensatory damages on each count of the Complaint in an amount to be determined at trial.

(C) Award Islandertech exemplary and punitive damages in an amount to be determined at trial.

(D) Grant such other and further relief as this Court in its judgment deems just.

COMPLAINT
Case no.: 2:15-cv-00281
Page - 16
Michael Rice Law
180 E. Walnut, #401
Pasadena, CA 91103
(206) 817-8177

1  **Jury Trial Demand**

Plaintiff demands a trial by jury as to all issues so triable.

DATED:  February 25, 2015

SIGNED:

_____
Michael Rice, WSBA #43730
*Attorney for Islandertech*

COMPLAINT
Case no.: 2:15-cv-00281
Page - 17
Michael Rice Law
180 E. Walnut, #401
Pasadena, CA  91103
(206) 817-8177